We will hear argument next in case 2444, United States v. Gary. Mr. Ellis. Mr. Chief Justice, and may it please the Court, the Fourth Circuit's automatic bigotry rule for forfeited reha'if plea colloquy errors is flatly inconsistent with this Court's repeated recognition that even the most fundamental rights can be forfeited, and that a Court of Appeals should recognize a forfeited claim only on a case-by-case basis in exceptional circumstances. The Court should reverse for two principal reasons. First, reha'if errors are not automatically or even generally prejudicial. Being convicted of a felony is not the sort of life event that one is ordinarily unaware of or forgets. In the minority of cases as it is here, it will be implausible that a defendant who pleaded guilty to possessing a gun as a felon would have insisted on going to trial if he'd only known, but the government would have to prove that he knew he had previously been convicted of such a serious crime. And second, there is no exception from plain error review for claims that were foreclosed by Circuit precedent at the time of the District Court's proceedings. This Court's decisions in Puckett and Johnson rightly recognize that the Court lacks authority to create such a textual exception out of whole cloth, and those holdings equally apply here. Plain error review is not an absolute bar to relief. As demonstrated by the experience of every other Court of Appeals in the wake of this Court's decision to reha'if, Courts can and should grant relief under that standard in cases where a reha'if error has truly worked an injustice. The Fourth Circuit's per se rule with us only served to undermine the careful balance between judicial efficiency and fairness established by the Federal rules and to provide a windfall to defendants like Respondent, whose convictions were and remain fundamentally fair. The Court should reverse the decision below, hold that forfeited reha'if plea colloquy claims are subject to the same case-specific plain error review as any other forfeited claim, and make clear that Respondent cannot make that showing. I welcome the Court's questions. Mr. Ellis, under the government's theory, does it matter which element a district court omits during the plea colloquy, or does the omission of an element never constitute structural error? We don't think the omission of an element ever constitutes structural error, and we don't think that any omission of an element would warrant a per se approach to plain error review. We think the Court's decision in Henderson v. Morgan and Boosley are instructive on that point. Now, the nature of the element would inform both the prong three analysis as to whether the defendant can show prejudice and the prong four analysis, but we don't think it justifies a per se rule. So if a district court advises the defendant during the plea colloquy that murder is a strict liability offense and it doesn't matter whether he has the intent to kill or not, you think that you don't have a per se rule there in a situation like that, that that wouldn't be structural error? No, Your Honor, we don't think that would be structural error. I think that is pretty analogous, actually, to the facts at issue in Henderson v. Morgan, a case where the defendant, the Court didn't inform the defendant that he had to have the intent to kill for a second degree murder conviction. And even there, the Court didn't grant relief without noting that it couldn't be harmless beyond a reasonable doubt. The structural errors are limited class, and they are those errors that really go to the overall structure of the proceeding and not a discrete error within it. And that includes serious errors don't qualify as structural errors. That doesn't mean the defendant can't show prejudice on a case-specific basis, but it does mean that it should be required to do so. What if it's just not one element, but two elements, three elements, doesn't matter? So there's no structural error if, you know, there are four elements of the offense and the judge leaves out three of them? So, you know, this Court's decision in Dominguez-Benitez, footnote 10, suggests that there might be some structural errors in the plea colloquy context. It pointed there to the decision Boykin v. Alabama. You know, that's pretty far afield we have here. It's not even just an element problem. In that case, the defendant pleaded guilty without being asked a single question about the nature, to make sure he understood the nature of the charges or the consequences or the right he was giving up. We do think, you know, that might arise to a structural error. Something short of that, you know, it's going to be a harder case than the one here. I think the Court grappled with the same sort of problem than neither, where Justice Scalia made a similar argument in dissent. What the Court said there was, you know, we're not going to go take this penny-in-for-penny-in-for-pound approach. We're not going to categorize all element errors as structural errors, just because there might be hard cases at the margins. And the last thing I'd say about that is we haven't seen cases that sort of press that line to date. And I think there's good reasons for that. As you get more and more egregious errors, it's just not going to matter if you label it structural or not. A defendant's going to be able to make a prejudice showing. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, would you briefly comment on Respondent's harmless error review approach to this case? So, I think you're referring to the Respondent's argument that he shouldn't have to satisfy plain error review? Yeah. So, that is obviously an issue that he didn't raise below, and it's raising it for the first time here. We think the Court has discretion to reach it, and we think it's flatly contrary to the Court's decision in Johnson. The Court in Johnson and Puckett recognize both that the Court doesn't have authority to create exceptions to the text of 52B, and the text of 52B doesn't admit of any exception for a feudal exception. In Johnson, there was near universal circuit precedent against the decision at the time when the error was waived, and still the Court subjected it to plain error review. The way it counted for that in was at the second prong of plain error review. It said that the Court's going to analyze the plainness of the error based on the law at the time of appeal, and that means that even in a circumstance like that where you forfeited a claim that was barred by circuit precedent, you can still get relief under plain error review. You just have to satisfy the third and fourth prongs. We think that's the right balance, and the Court should reaffirm that approach here. Can you think of, I may have missed this in your discussion with the Chief Justice, but can you think of any error that would require automatic vacature under plain error? Under plain error? No, Your Honor, the Court hasn't identified one, and what it has said repeatedly in Young and Puckett is that a per se approach to plain error is flawed. The rules of plain error are intended to set up a system where you are encouraged and incentivized to raise your claims in a timely manner, and then provide a safety valve for courts of appeals to exercise their discretion to recognize a forfeited claim when there has been a showing of prejudice, and when it would undermine the fairness and integrity of judicial proceedings not to do so, but we don't think there's a per se rule for any type of error. Thank you. Justice Breyer? No, thank you very much. I have no questions. Justice Alito? If we were to rule for Mr. Garrity in this case, do you have an estimate of the number of cases pending in the courts of appeals or before this Court that would be affected? We know that in our brief there are 80 cases being held by 82, cases being held out of Fourth Circuit, the only circuit to not apply the normal plain error standards here that would be affected. Obviously, the Court's decision would have broader effect across the board, and I can't give you an estimate of that number of cases. What I can point out is that 922G prosecutions are among the most common in the federal system. In 2019, we cited a study on page 42 of our opening brief. They counted for nearly 10 percent, or I think just over 10 percent of all federal cases. And so, you know, Garrity's rule here would require automatic bigotry of all those claims in which they're asserted on direct appeal. I'd also point out that, you know, whatever the burden is as a matter of quantitative matter, qualitatively it just doesn't make any sense. The other circuits and the ordinary principles of plain error review allow defendants who are actually harmed by a rehab error to get relief under plain error review. And so, really, the Fourth Circuit's per se rule has the effect of just catching those cases where a defendant can't make a plausible claim, like this one, that it would have made a difference in the proceeding. Well, the respondent suggests that automatic bigotry in cases like this one poses a significant burden on the judiciary because most defendants will readily plead guilty again. Is that true? It's hard to predict what defendants will do. I guess the fact that they're asserting it on the first time, even if had the error been raised, they would have. You know, I think as far as concerns about counsel raising a litany of futile objections, I'd say two things. The first is that Johnson already dealt with that. As I noted, that very argument was made in Johnson. The court agreed with it. It was a legitimate concern, but held that the right approach was to make the second prong of plain error turn on the law at the time of appeal. That means that you're not foreclosed entirely when there's a change of law, but you still have to make a prejudice showing. And in the wake of that, we haven't seen a litany of futile objections being raised. I think that's a good reason. Defense counsel have all the incentive to focus on claims that might actually make a difference. And they can know that even for forfeited claims where there's a change of law, their client can get relief under plain error review if it really made a difference and worked in justice. Thank you. Justice Sotomayor? Counsel, this is very different kind of case than our other plain error cases, because in our other cases, the defendant had a reason for putting forth a defense. So whether it was neater, the defendant knew that someone had to find materiality. It was the same thing in Johnson. But this is the kind of case where no defendant knew that there could be an offense at all. So why wouldn't we find that a structural error? You're admitting the requirement of an offense at all. And even if we found it to be structural error under prong three, why wouldn't you win under prong four? Because assuming that a court can look at the defendant admitted to the probation officer that he and to the court, I believe that he knew he was a felon. So don't you win either way? We do. We agree with that. We win either way. I think Johnson and Cotton make crystal clear that even if you decide this is the kind of error as a structural error, that it still has to satisfy prong four. And I agree entirely with the premise of your question, Your Honor, that the defendant here would lose on prong four. That said, I don't think it is right to call this a structural error. You alluded to the fact that the respondent's argument that he wouldn't have an opportunity or incentive to challenge the evidence here as to his knowledge. I don't think that's accurate as a general matter. The evidence we're relying on here is from the PSR and sentencing, his own statements, as you point out. Do you have the same answer to the questions posed earlier about the defendant who really didn't know or have an opportunity to create a record? Do you agree that we should look at those cases even in a guilty plea as different than in the normal situation that a defendant should be able to proffer evidence before the appellate court? So we haven't gotten into the record questions here. I would say a couple of things about that. First, we know, at least with regard to the record before the district court, that's entirely open on... No, no, I'm not asking you that because it never gets back to the district court unless the appellate court says that there was an error that sends the case back. I'm asking the question as if the defendant didn't know and put into the record a plausible defense. Do you agree with your colleague in Greer that that defendant could proffer that to the appellate court? Yes, Your Honor. We have no objection to a defendant offering that up, proffering that on the first instance to the court of appeals in that instance. Thank you, counsel. Justice Kagan? Mr. Ellis, when you were answering the Chief Justice's hypotheticals earlier, you said that structural errors really all go to the overall structure of the proceeding, and that's why none of the hypotheticals he gave you were, in fact, instances of structural error. But I had thought that there was a different category of structural error where what we were looking at was some interest that was unrelated to whether there was an erroneous conviction, and in particular, a category where we were concerned with autonomy interests, with the ability of a defendant to make his own choices. And in some of those hypotheticals that the Chief Justice was giving you, I would have thought that there was no such ability to make your own choices, that you have so little information in cases like that, that the autonomy interest is raised to a very high level. So I'm curious as to your response to that. Sure, Your Honor. So I agree with you that the court, and Weaver in particular, identified one reason why an error might be a structural one, is that it protects an error different than the conviction in a specifically flagged autonomy. I'd say first that, you know, what Weaver went on to say is that that sort of error is still not the kind that should remove or leave a defendant of his requirement to show prejudice, and certainly wouldn't go to the fourth prong. Now, as to whether this kind of error is an autonomy, protects the autonomy interest, I think not. I think where the court's found autonomy-based structural errors have been pretty narrow circumstances. So think about McCoy, where the court held that a autonomy interest was violated, where their counsel conceded guilt over their objection. But in McCoy, the court distinguished that instance from where a counsel conceded guilt without an objection. Well, go back, Mr. Ellis, to the Chief Justice's hypotheticals, or maybe to a couple of different ones. You know, suppose a defendant pleaded guilty without being informed of any of the elements of the offense. He didn't really even know what crime he was pleading to. Would that be structural error because it interfered with his autonomy interest? So our view is no. That autonomy, those sort of autonomy interests, as I was saying with McCoy, are really ones where either the court or the counsel have taken interest over the express objection of a defendant. How would he even know what to object to if he didn't know anything about what the crime was? I mean, how can a defendant make the choice to plead guilty if he doesn't know what he's pleading to? I would have thought that that's a pretty non-autonomous decision-making. I'm not disputing the fact that there is some autonomy here when you're not being made a completely knowing choice. The problem with taking that sort of a view of a structural error is that it would suggest that sort of any error in the plea colloquy context and informing of a defendant of his knowledge would risk being a structural error. Either way, I think, Your Honor, what I was saying before, I think what in that case, you're going to need to show prejudice. And we know from Johnson and Cotton that you're going to show the fourth prong. So I don't think you have to definitively answer that question here. I also think even if you think there are some plea colloquy errors, as I noted to the Chief Justice, that would be structural, be it for autonomy reasons or others. We're not getting close to that here. And we don't think it's really... Thank you, Mr. Harris. Justice Gorsuch? You have no questions at this time. Justice Kavanaugh? Additional questions. Justice Barrett? None for me either. A minute to wrap up. Mr. Ellis? Thank you, Mr. Chief Justice. So as I was just discussing with Justice Kagan, I think there are, we know there are hard questions here in this case about precisely where to draw the line between discrete plea colloquy errors, like the one here, and a more fundamental breakdown in the process where relief should be available under even plenary review. But wherever one might draw that line, this case falls far short of it. When a respondent possessed the weapons at issue here, he'd been convicted of seven different crimes, punishable by more than a year in prison. He'd spent multiple years in prison, he'd been released months before. He knew that he was not supposed to possess a gun. And in that respect, the respondent's circumstances are not atypical of 922g1 defendants across the country. Every other court of appeals has been able to apply the ordinary principles of plenary review to distinguish between cases like this one, where relief would do nothing but award a windfall to a defendant whose conviction is fundamentally fair, and those All we're asking is that the court reaffirm that well-settled approach. Thank you, counsel. Mr. Fisher? Thank you, Mr. Chief Justice, and may it please the court. The due process error here requires automatic reversal for two reasons. First, because the error is structural. A core aspect of the autonomy every defendant must be afforded is the ability to decide whether to contest the government's allegations, or instead to relinquish one's physical liberty without trial and submit to a term of imprisonment. Failing to advise the defendant of the complete charge against him necessarily deprives him of the ability to make that grave choice knowingly and intelligently. Indeed, it would trample the framers' vision of free will to enforce a guilty plea where the only facts the defendant admitted do not even constitute a crime, and where, having now been advised of the true nature of the charge, the defendant wants to contest it. Second, the constitutional defect here. For starters, the plain error doctrine should not even apply. But even if Olano's test does apply, the result would be the same. Structural errors necessarily satisfy Olano's third prong as a matter of plain text analysis. And, in the words of the fourth prong, it would seriously affect the fairness, integrity, and public reputation of judicial proceedings to allow a guilty plea to stand without fair notice of the charge. And that is especially so where the only reason for withholding relief would be that the defendant failed to make a pointless, totally formalistic objection. That leaves the government's complaint about the practical consequences of having an automatic vacatur rule here. They would be slight. Our rule would do nothing more than return an average of one section 922 case to each district judge, as the government's own statistics demonstrate. That seems a small price to pay for honoring what this court has long called the first and most universally recognized rule of due process, fair notice of the alleged conduct for which the government seeks to put one of its citizens behind bars. I welcome the court's questions. Mr. Fisher, I want to talk just a moment about your unanimous, you know, the proposed futility exception. What does it take to satisfy that unanimous view of the circuits, but only three circuits? Well, Mr. Chief Justice, obviously, all you would need to say in this case is the unanimous view of the circuit. Mr. Fisher, you understand that, you know, I'm not talking about this case, but a general rule. Fair enough. We're making alternative suggestions to the court. I think the first suggestion is that the court could say plain error does not apply when the unanimous view of the circuits was against the defendant. So two circuits is unanimous. I mean, is that enough? Oh, I'm sorry. Forgive me. What I mean is every single court with criminal jurisdiction. That is the situation where it is true futility. There's no circuit split to put the defendant on notice that the judge on notice that the issue is arguable, and there's no possibility that any other court would adopt the alternative view. And so here you have the truly unique situation that the court has never faced before of true futility. And my alternative submission, Mr. Chief Justice, is that even if you don't think that the plain error doctrine should be set aside here, at the very least, the futility of the objection should be considered as part of the prong for analysis. As the conversation this morning in the first case demonstrated, and I think the government's position in our case also demonstrates, that is a broad prong that looks at fundamental fairness and the reputation of proceedings. And so at the very least, we think it would be unfair and would bring disrepute on the judiciary to deny relief in a situation where the defendant had no reason to object. And in fact, it would have been utterly pointless and You know, the cases where we've held that it's not structural error, I think if you put them side by side with yours, it's hard to say that yours is necessarily stronger. You know, the judicial improper participation in the negotiations, the government's actual breach of a plea agreement, if those aren't structural, why is the error in this case? The thing that sets this case apart, Mr. Chief Justice, well, actually, there are two The first is what Justice Kagan mentioned, which is the autonomy interest at stake. The court has said that where the defendant is deprived of a choice to make the fundamental decisions about his own defense, that is a different sort of error. And that is the essence of what you have here, which is a defendant who is unable to even decide whether to challenge the government's case in a knowing and intelligent manner. And that leads to the second reason that this is set apart, which is the first and most elemental aspect of due process is fair notice of the charge. And when that is deprived, then everything else that follows cannot be trusted. Thank you, counsel. Justice Thomas? I have no questions, Mr. Chief Justice. Justice Breyer? What is the difficulty of making, you made all these arguments, fine. So the lawyer for the defendant says to the appeals court or the district judge, we wouldn't have pled guilty. Now, you'd have to make it plausible, reasonable, or you wouldn't have, and then that's the end of it. You win. I mean, why call it a structural error? Why not just say it's a plain error? Show that it was likely it would have made a difference? End of case. But in a case where there's an element, you know, it wasn't known about, et cetera, da, da, da. But it's obvious it wouldn't have made any difference whatsoever. You lose. I mean, why is that a tough system to work? I think for two reasons, Justice Breyer. The first relates to the answer I gave to the Chief Justice, which is that when you have a violation of the defendant's own autonomy to decide whether to challenge the government's case and submit to a conviction without any trial whatsoever, the bare minimum when you have a plea, a guilty plea, is that the defendant understand the charge. And that may sound like a formalistic rule, but remember, guilty pleas are themselves an innovation the framers were not even aware of. And so when you're going to introduce something, a conviction without trial, the defendant should at least have fair notice. And so that's the primary. And the second reason is that you simply cannot trust whatever record may have been constructed at the guilty plea colloquy, where the defendant has no reason to know that the missing element has any salience at all. And then when you get to the sentence proceeding, the defendant has the opposite incentive. The government said earlier this morning that the defendant would have an incentive to challenge a missing mens rea element at sentencing. But as we cite on page 33 of our red brief, courts have held exactly the opposite, which is that if the defendant at sentencing, having pleaded guilty to what they think is a turn around and say, well, you know, I didn't know what I did was wrong. Judges then hold that against the defendant and deny acceptance of responsibility and give them bigger sentences. So it's just not a record that you can trust on appeal to do any sort of. The briefs, he says, look, judges in the appeals court. Hey, I didn't know that there was this obviously. And if I had known, I wouldn't have pled guilty. And then you put in a general description of what makes that plausible, reasonable to think in the circumstance. You don't have to go into some big record, just have to explain it and back it up. Well, Justice Breyer, two things. One is I think I've made an argument that you shouldn't have to do that because the Fourth Circuit correctly held that the error is structural and that prong four is satisfied in this situation. But why shouldn't you have to do it? The reason why you shouldn't have to do that are number one, because it's structural error for the reasons I've said, and that satisfies prong three, because an error that affects substantial rights is necessarily structural. Secondly, prong four is satisfied because the autonomy violation, the fundamental fairness violation themselves satisfy prong four. And even if they didn't, the futility of the exception should be a futility of an objection should be taken into account. And that would show that it would be fundamentally unfair to deny relief. But Justice Breyer, I want to add one last thing, which is we do argue in this case that Mr. Gary would not have pleaded guilty had he known of the element. And we get the reasons why he would have a defense to the mens rea element in rehape. It's just that that is not an issue in front of this court. If we had to make that argument at a remand, we would and we do have an argument that's laid out at the very tail end of our red brief, but we just don't think that's in front of the court. Justice Alito. Mr. Fisher, would your autonomy argument mean that every misstatement and every material omission made by a district judge at the rule 11 proceeding require is structural error? No, Justice Alito, we focus just where the court itself focused on in Boosley and Dominguez Benitez on errors that that omit the elements. And so the defendant does not have an understanding of the nature of the charge. And the court has distinguished in both those cases, other sorts of errors that go to things like the strength of the government's case or the consequences of a guilty plea or the like. Well, why wouldn't the autonomy argument apply to any judge at rule 11 proceeding? The judge explains to the defendant the rights that the defendant is giving up and what the government would have to prove if the case went to trial and the defendant presumably makes a decision about whether to go to trial or plead guilty based on that understanding of what is at stake. And so if the judge misdescribes what is at stake, it seems to me the same autonomy interest is implicated. No? What's wrong with that? The difference, Justice Alito, is that the autonomy interest here, and the only autonomy interest I think fairly recognized in the court's cases, is understanding the nature of the charge and understanding what you are agreeing that you, the wrongful conduct you are agreeing that you committed. If you just isolate the element here, Justice Alito, maybe you put it this way, which is that the court is here today telling the court, I want to challenge the mens rea element in rehafe. And so the issue in front of the court is whether he gets to make that choice or whether the court makes it for him without him ever being able to make it for himself. And that's a different sort of a choice and a different sort of autonomy violation than technical violations of rule 11 like you dealt with in Dominguez. On the issue of futility, if I understand the chronology, at the time when your client pled guilty, Judge Gorsuch's separate opinion in the Tenth Circuit on this issue had been issued, in fact had been on the books for a number of years, and Judge Gorsuch had become Justice Gorsuch. So why would it have been, why was it futile to raise the issue at that time in the district court? Had that been done, we might be talking about Gary cases as opposed to rehafe cases. Well, I think that's the best argument for why the defendant should have raised the objection. But we don't think you can distinguish a situation where there's a single dissent out there from many other situations like where justices of this court have said, I think we should reconsider this precedent or the like. If you're going to hold defendants to require them to object in all of those circumstances, the defenders tell you in the amicus brief and the judges themselves, district judges tell you themselves in their brief, what you're going to be requiring is an omnibus motion at the beginning of every criminal case and objections throughout that are all based on perhaps single judge opinions or single justice dissents that are just going to clog up the machinery of criminal justice. And remember, rule two tells you that you should construe the rules and apply them to seek efficiency, fairness, and simplicity. And the government's position here would give you the opposite. All right. Thank you. Thank you. My time is up. Justice Sotomayor. Mr. Fisher, even assuming that this was structural error under prong three, for the reasons that you stated or just narrowly because there was no reason for him to know that anyone would have to find this element. And so no reason to proffer to consider this defense at all. Don't you still have to meet prong four? And I don't want you to argue Mr. Greer's case, but assuming that on prong four, all evidence in the record could be looked at. Tell me what defenses are plausible that your client could raise. You mentioned they may have been in your red brief. I just don't remember seeing what they were. Three things, Justice Sotomayor. First, I agree that we have to satisfy prong four if the plain error doctrine applies. And so we have an argument that it doesn't apply, but if it does apply, we have to satisfy prong four. And then the argument that I'm making to the court here. No, those are not the arguments I'm looking for. I'm looking for a factual defense to knowledge. Here is a man who was convicted seven times, multiple separate jail terms, vastly exceeding one year. And I think he had been let out of his last conviction months before he was arrested on discharge. So what would have made it, what factual defenses to knowledge would he have plausibly had? So I'm going to answer your question, Justice Sotomayor, but if you forgive me one quick thing, I want to make sure I reserve, which is we do not think the issue is in front of the court. Our argument is that he automatically satisfies prong four because of the nature of error and futility. But what our argument would be on the facts on remand is that even though he has seven convictions, none of them were convictions where he served more than one year of imprisonment following that conviction. And so the only conviction the government really put in front of the Fourth Circuit is a 2014 burglary conviction. There he served more than a year of pretrial detention, but he was let out on a suspended sentence after the guilty plea. And so he reasonably might have thought that pretrial detention has no relationship, as the court knows, to what the ultimate sentence could be. How about his admission that he knew he was a felon and that's why he was hiding? So that was not his admission, Justice Sotomayor. What his admission was, and I'm going to quote here, was that he was aware he was not supposed to have a weapon. He did not say anything about his felon status. And remember, at the outset of this case, he was charged under a state law that prohibited carrying guns without certain, you know, job titles like a policeman or a firefighter or the like or a fisherman. And so that alone would have told him he couldn't carry a gun for reasons having nothing to do with any felon status. Thank you, counsel. Justice Kagan. Mr. Fisher, like Justice Alito, I'm also trying to get a handle on what you think is autonomy infringing and why. So if we could think about the error in Bowsley, there the court advises the defendant that using a firearm in connection with a drug crime requires only gun possession, but that's not right. In fact, it requires active employment of the firearm. Is that structural? I think probably, Justice Sotomayor, for this, I'm sorry, Justice Kagan, for the same reasons I've described. It's obviously a little bit different because I think that would be thought of as a misdescription of an element and not a total omission. But remember, I think it's telling that the government itself was unwilling to offer you or the chief justice any limiting principle, and I think that's the problem, is that we're offering the court a rule that says it is structural error because it violates the autonomy if the defendant does not have true notice of the charge against him. So a misdescription or omission is not your dividing line. So, for example, if the court had told your client that a felon was someone convicted of a crime that carries a sentence of six months, that would be just as autonomy infringing. Is that right? I do not think it would be quite as autonomy infringing, Justice Kagan. I think you could draw that line, but you wouldn't necessarily have to. I think you have to draw a line somewhere, and all we're asking the court to do here is say at least where an element is omitted, then you cannot fairly say that the defendant made a free and voluntary choice to plead guilty. Right, but when you move back from that, I mean, I could imagine cases where an element being omitted is of considerably less importance to anybody's decision to plead as another case where there's been a misdescription of an element. Again, I will concede that I think that you could put those two cases together, and where you think about laying down a principle in the long run, I think those cases may go together. But just remember, this swings the other direction too, and the government is here saying even if two elements are omitted, even if three elements are omitted, that's not structural error. Somewhere it has to be structural error. I'm sorry. Go ahead. Is your view that this has nothing to do with the question of prejudice? I mean, imagine a case where we think in light of the nature of the omission or in light of the nature of the misdescription, I mean, every defendant in his right mind would still have pleaded guilty. In that case, we're just not allowed to say that? That is my argument today, Justice Kagan, and because that is the nature of the air. I mean, I think what you just said is very much what the court said in the Feretta line of cases, which is no matter how ridiculous it was for the defendant to represent himself, or no matter how guilty he may have been, if we violated that right, as a court system, the defendant gets automatic relief. And McCoy holds the same thing. And so we just ask the court to recognize that this is the molten core of due process, which is understanding what you are charged with before you submit yourself to prison without a trial. And in that situation, even if it appears formalistic on the surface, it is such a deeply fundamental right, not just on an autonomy level, but fundamental fairness, the third prong of structural error, that you should give automatic relief. Thank you, Mr. Fisher. Justice Gorsuch? Mr. Fisher, I'm still trying to get my hands around your futility argument. The contemporaneous objection rule is heavily embedded in tradition and also in the federal if a party does not have an opportunity to object. That's the test. It's not some sense of how many circuits have ruled against it or whether it's likely to lose or how likely it is to lose in front of the district court or in the court of appeals. It's an opportunity. And how do you reconcile your argument with that language in Rule 51? Justice Gorsuch, the way that we construe the text is to apply the canon that where court incorporates a term of art with prior accumulated legal meaning that that term carries the old soil with it. Yeah, I just haven't seen any of that from your brief. You mentioned a Second Circuit opinion, but there's nothing from this court that's ever construed an opportunity to object to mean a likelihood of success on that objection. No, but what the court has done is had decades of cases leading up to 1944 where this rule, where the rules were codified in this respect that held that whether it was an intervening decision that the defendant would have had no reason to see coming, that plain error does not apply. Oh, an intervening decision, but here, here again, there was plenty of notice that this was an available argument out there. It may not be one that the Eleventh Circuit was likely to have adopted, but why wasn't, you know, even if we're going to play the sufficient notice game rather than the opportunity game, why wasn't there sufficient notice? I don't deny there was sufficient notice, but that was never the test the court applied. And the case I would most readily direct you to is the Hormel decision. So you agree that there was sufficient notice now? No, I think obviously your opinion was on the books, and so there was notice of that. I was against him because of what the district judge said. The defendant had no... So there was notice, and he did have an opportunity. There was no notice of the mens rea element truly being part of the charge. There was notice that it was an available argument. You could, you might say that, but again... Okay, and there was nothing that prevented, the district court didn't prevent him. There was no restriction of his opportunity. You'd agree with that too? Uh, I can accept that, Justice Gorsuch, but if you let me just point you to one case, which is right before Rule 52 was codified, the Hormel decision, which itself is cited in Olano, the court said... Yeah, that's Rule 52. I was asking about Rule 51, but my time's expired. Thank you. Justice Kavanaugh? Thank you, Chief Justice, and welcome, Mr. Fisher. Just to zero in on this particular case, and this precise issue in this case, I think you're saying that it's unfair to defendants to have their conviction by trial or plea when the government wasn't required to prove that the defendant knew he was a convicted felon. And the Fifth Circuit said, well, convicted felons typically know they're convicted felons. Judge Wilkinson said felony status is simply not the it seems odd to throw out all the convictions if you accept that premise. So, do you accept the premise that convicted felons typically know they're convicted felons? I think that may be true, Justice Kavanaugh, but one thing is you said pleas and trials. We're focused here just on the plea situation in this case, of course. Right. And the question should not be whether defendants are typically aware of the element or the element is typically satisfied. The question should be whether the defendant, when he pleads guilty, understood that that was part of the charge and therefore was given an opportunity to exercise his own free will in deciding whether to challenge that element. Obviously, in Rahafe, seven justices of this court thought that the element was quite important. And, in fact, it separated wrongful from innocent conduct. And so another way to put our submission is that the defendant should at least have the opportunity to decide for himself whether to agree to wrongful conduct and submit to term in prison, even if it's unlikely he would satisfy that. I mean, you could take a case, Justice Kavanaugh, where there's a videotape of the crime or the defendant later wrote a book about the crime, Justice Alito was positing this morning, or any number of other things. And we simply cannot allow a system where defendant is never given an opportunity either to understand the charge and agree to it or to challenge the government's allegations at trial. One of those two things must take place. Thank you, Mr. Fisher. Justice Barrett. Good morning, Mr. Fisher. So should the defendant have to represent to the Court of Appeals that he wouldn't have entered the plea had he known, say, about Rahafe? I think, Justice Barrett, there's two ways that I can understand that question. You know, the answer is no, if you're asking, do we have to satisfy the Dominguez test? But I think the answer is yes, if you're saying, if you're just saying, you know, should the defendant represent that he wants to withdraw his guilty plea and challenge the government's case? I mean, that's the reason why Mr. Gary is here. You know, there were some questions earlier about statistics, and we've done our best to figure that out on our own end. And it's only, I think, fewer than 10% of the defendants who are on direct review after Rahafe that have made a claim like Mr. Gary's. So it's not like every defendant is making this kind of a claim, and there's no windfall to be gained by making it. The defendants may end up being convicted and getting a longer sentence. Rather, what the defendants like Mr. Gary have decided is that they would like to challenge the government's allegation, and they would like to put on a defense on that element. So that's why they're bringing these appeals. And so do you think that's kind of a natural weed out mechanism for the point that Judge Wilkinson was making that, you know, felon status is not the kind of thing that you were going to forget? So there, the likelihood that they would succeed if indeed they want an appeal and went back and put the government to its proof is itself a deterrent against a flood of cases? I think so. I think that that's one thing that actually does naturally serve that, that interest, and if you might want to call it a practical interest in that respect. And remember, these are not decisions that defendants like Mr. Gary make lightly, because once you vacate the guilty plea, the case starts over. And, and you just go back to square one where you were before and the government could seek a longer sentence. The government could say he no longer deserves acceptance for responsibility if he's convicted, etc. Thank you, Mr. Fisher. A minute to wrap up, Mr. Fisher. Thank you. I think because we've become so accustomed to our system of guilty pleas that I understand the temptation that the court may have to think of this case as involving a request for relief based on a violation of something of a formalistic requirement of criminal procedure. But in fact, this case involves the most fundamental of principles and the most sensitive of practices, a conviction without a trial. Indeed, because of the stakes involved for individuals and the fear of government abuse, as the court knows, the concept of a guilty plea itself was largely unknown to the framers. So we're obviously not asking the court to second guess the modern development of the guilty plea system. But what we are saying is that an indispensable requirement of a conviction obtained in this manner is fair notice of the true charge, and especially of any element like the mens rea element here that separates wrongful conduct from innocent conduct. So a defendant can at least make an intelligent decision whether to surrender his liberty without even putting the government to its proof. However hazy that principle may appear in the mire of procedural debates about prong three and prong four, et cetera, that we've had today, no constitution designed to secure freedom can function without honoring that fair notice concept. So we ask the court to affirm the Fourth Circuit's automatic vacateur rule. If, however, the court thinks that the defendant needs to show some sort of prejudice, then we'd ask the court to remand to the Fourth Circuit so we can make those arguments in the first instance to the Court of Appeals. With that, we'll submit the case. Thank you, counsel. Rebuttal, Mr. Ellis? Thank you, Mr. Chief Justice. Just a few points. First, I think what the respondent's time at the podium this morning makes clear is that he's either offering a highly gerrymandered rule in this case or one that would affect a cease-change in both plain error and structural error. As to the gerrymandered nature of futility, he argues that there should be an exception only where the circuit precedent was universal. But if what we're worried about is a district court being able to credit an objection, then all it takes is a contrary precedent in that defendant's circuit. And if we're worried about letting the court or the parties do something to aid in the can happen just as often as it can when there's universal circuit precedent as when there's near universal circuit precedent or anything less. On structural error, it's not clear, as Justice Kagan pointed out, why a mens rea element like this one would be more important to a defendant than the righted issue in Vaughan, which was the right to counsel a trial, or the error in Dominguez Benitez, which was informing the defendant that he couldn't withdraw his plea if the court didn't agree with the government's recommendation for a safety valve, which made the difference between a mandatory minimum of 10 years or only 70 months, could be only 70 months in prison. Even the gerrymandered nature, though, of the rule that he offered doesn't work. On futility, the court is, the futility exception is flatly contrary with Johnson. I think it's worth pointing out in that case, the error that was forfeited was one that the court in Gowden had to overrule its own any more futile in that case than it was here. And as to the structural error, the respondent's argument that any element left out is structural and not susceptible to prejudice analysis cannot be squared with this court's decision in Henderson or in Boosley. And so we ask the court to reject that on those grounds as well. Finally, the respondent's counsel ended with a plea that even if the court reverses the Fourth Circuit and says that automatic rule isn't appropriate, it should remand for the Fourth Circuit to have another crack at it. We'd urge the court not to take that approach. The Fourth Circuit did have a chance to pass on prong three and prong four. It did, it just badly erred. So just as this court did in Cotton, just as it did in Rosales-Morales, we'd urge the court to reach those prongs, to resolve it and provide guidance to the Fourth Circuit on how it should apply. And we'd ask the court to reverse. Thank you, counsel. The case is submitted.